Johnson, J.
delivered the opinion of the Court.
*43 This case presents three questions, 1st. Whether a Justice of the Peace has jurisdiction of a suit against one as executor de son tort. 2d. Whether an executor de son tort is liable beyond the assets which come to' his hands. 3d. Whether an executor de son tort can retain for his own debt of a higher degree.
1st. All trespasses, however trifling, are expressly excepted from the jurisdiction of Justices of the Peace, by the acts of the Legislature; and the position that a Justice of the Peace cannot entertain a suit against one as executor in his own wrong, is deduced from the principle that the intermeddling with the goods of a deceased person is a trespass. There is no doubt, that with respect to the rightful executor, any intermeddling with the goods of the deceased, is the foundation of an action of trespass ; but strangers or creditors have not that fixed and legal interest in the property of the deceased, that will enable them to maintain that action. If one possesses himself of the goods of a deceased person, and does those acts which properly belong to a rightful executor, creditors have a right to regard him as such; and having taken that character on himself, he will not be permitted to disavow it. To the extent of the assets which come to his hands, he is liable in the same manner, to the same extent, and in general, on the same principles as a rightful executor. And this suit having been founded on contract, the Justice of the Peace before whom it was tried, clearly had jurisdiction.
2d. The authorities all agree, that an executor de son tort, can plead plene administravit, and that, he is not liable beyond the amount of the assets which came into Ills hands. Cases have occurred, in which they have been charged to a greater extent; as when one pleaded ne unques executor, which was found against him, and he was charged with a debt of £60, when a bedstead only had come to his possession: And in another case, with £100, when he had received a bible. But it will be seen that the liability in' these cases, was the consequence of false pleading, and did not conclude the right of the defendant to plead piene administravit. Bacon Abr. Ex’ors. and Adm’rs. B. 3. The only article which was proved to have come into the possession of the defendant, was a cow of the value of $12. To that extent he was liable, and the judgment being within that amount, it must stand.
*44 3d. In Courtis v. Vernon, 3 T. R. 590, Lord Kenyon says that though an executor de son tort, be a creditor of superior nature, it is clear- from all the authorities, that he cannot retain for his own debt. And such is conceded to be the rule at law; but it is said that the rule is otherwise in equity, and the jurisdiction of a Justice of the Peace being equitable, as well as legal, it ought to have been allowed here. No case has been cited in support <5f this position, nor have I been able to lay my hand on any one, in which it has been allowed.
In 2 Fonbl. 240, the general rule is laid down that an executor de son tort cannot retain, and the reasons on which it rests, preclude the idea that a different rule prevails in Equity. Any intermeddling with the goods of a deceased person without lawful authority, is, as before observed, a wrong; a trespass, for which an action lies at the suit of him who has the legal right of possession; and the right to retain is wholly inconsistent with this remedy. The right to retain would be the leading, if not the only motive to such intermeddling; and if it were allowed, the administration of the estate of one who died indebted, would be according to the laws of force, and not of reason. It would lead directly and inevitably to a contest between the creditors for the possession of the goods of the deceased, and the rights of all being equal, the strongest would bear off the spoil. The law has prescribed the order in which debts are to be'paid, and estates administered, and it is but just that he who attempts by force or fraud, to divert the assets from their legitimate channel, should be compelled to forego the advantages, which he has acquired by his own wrong.
It is not impossible, that under very peculiar circumstances, a .retainer may have been allowed in the Courts of Equity. Those Courts exercise a very latitudinary discretion in cases consisting of circumstances which are not reducible to any rule; but if such cases do exist, they will rather support than impugn the general rule.
Motion refused.